UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.S.S.M.,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>MINGA WOFFORD, in official capacity as the Field Office Director of Mesa Verde, Office of Detention and Removal; et al.,<br><br>　　　　Respondents. | No. 1:25-cv-01518-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Petitioner F.S.S.M.'s[1] ("Petitioner") Amended Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (ECF No. 10.) Respondents Minga Wofford, Sergio Albarran, Todd Lyons, Kristi Noem, and Pam Bondi (collectively, "Respondents") filed an opposition. (ECF No. 14.) The Court held a hearing on November 14, 2025, and GRANTED Petitioner's motion in a ruling from the bench. (ECF No. 15.) This Order supplements the Court's November 14, 2025 ruling.

///

///

---

[1] As stated on the record during the November 14, 2025 hearing, Petitioner's unopposed Motion to Proceed via Pseudonym, (ECF No. 3), is GRANTED.

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a citizen and national of Ecuador who entered the United States when he was seventeen years old. (ECF No. 10-3 ¶¶ 9–10.) Petitioner left Ecuador due to severe threats and violence perpetuated by local gangs against him and his family. (*Id.* ¶¶ 18–19.) On or about September 4, 2019, Petitioner attempted to file a police report concerning the threats and attacks they had endured. (*Id.* ¶ 19.) Shortly after, on or about September 15, 2019, gang members appeared at Petitioner's home, severely beat his brother, issued death threats to Petitioner and his family, and warned that if he or his family reported to the police again, they would be killed. (*Id.*) Petitioner's mother, who raised him in poverty, failed to protect him from the gang threats or attempt to relocate him to a safer area. (*Id.* ¶ 21.) Petitioner's father had previously abandoned the family in 2007. (*Id.* ¶ 20.)

Petitioner and his brother left Ecuador and entered the United States on or about October 12, 2019. (*Id.* ¶ 10.) Upon entry, Petitioner was served with a Notice to Appear, initiating removal proceedings. (*Id.* ¶ 11; ECF No. 10-7 at 2–4.) Petitioner was subsequently classified as an unaccompanied child and placed under the custody of the Department of Health and Human Services, Office of Refugee Resettlement ("ORR"). (ECF No. 10-3 ¶ 10.) Petitioner was detained in Arizona at the SWK Casa Amanecer shelter for minors for approximately three months. (*Id.*) On January 16, 2020, Petitioner was released to the care of his sponsor, his aunt, pursuant to section 462 of the Homeland Security Act of 2002 and section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (collectively, the "TVPRA"). (*Id.*; ECF No. 10-7 at 5.) Since his release, Petitioner has been living and working in New York with a valid employment authorization. (ECF No. 10-3 ¶¶ 12, 17.) Petitioner has no criminal record and has complied with all court hearings and required check-ins with ICE. (*Id.* ¶¶ 23–27, 46.)

On August 2, 2023, Petitioner was approved for Special Immigrant Juvenile Status ("SIJS") and granted deferred action. (*Id.* ¶ 16.) His deferred action was to remain in effect for a period of four years until August 2027. (*Id.*)

On August 6, 2025, Petitioner was apprehended by Immigration and Customs

1 Enforcement ("ICE") while working in Buffalo, New York. (*Id.* ¶ 30.) He was not provided a
2 reason for his detention or warrant for his arrest. (*Id.* ¶ 31.) ICE only asked Petitioner if he was
3 "legal," to which he replied he had SIJS and employment authorization. (*Id.*) U.S. Citizenship
4 and Immigration Services terminated Petitioner's deferred action without notice several days after
5 his arrest. (*Id.* ¶ 16; ECF No. 14 at 3.)

6 Petitioner was initially held at the Batavia Buffalo Detention Center in New York. (ECF
7 No. 10-3 ¶ 33.) For the first week of his detention, Petitioner was held in a closed room furnished
8 with only metal seats where he endured unsanitary conditions, intense cold, severe overcrowding,
9 went without food for two consecutive days, was forced to sleep on the floor without access to a
10 mattress or blanket with the lights constantly on, and was denied access to a shower or clean
11 clothes. (*Id.* ¶¶ 33–34.) Petitioner was later transferred to a dormitory within the same Batavia
12 facility where he remained for approximately one month. (*Id.* ¶ 35.) Petitioner was then
13 transferred to detention centers in Louisiana, Texas, and Arizona, before arriving at the Mesa
14 Verde ICE Processing Center in California. (*Id.* ¶¶ 36–44.) Petitioner was kept in full restraints
15 during the transfers and forced to sleep on the floor in unsanitary conditions and deprived of clean
16 clothes and hygiene items at these detention facilities. (*Id.*)

17 On November 9, 2025, Petitioner filed a Petition for Writ of Habeas Corpus and Motion
18 for TRO and Preliminary Injunction. (ECF Nos. 1, 2.) Petitioner filed the instant Amended
19 Motion for TRO and Preliminary Injunction on November 12, 2025. (ECF No. 10.) On
20 November 14, 2025, the Court held a hearing and granted Petitioner's motion in a ruling from the
21 bench and ordered him immediately released from custody. (ECF No. 15.) This order further
22 explains the Court's reasoning.

23 **II.     STANDARD OF LAW**

24 A TRO and preliminary injunction are both extraordinary remedies. In general,
25 "[t]emporary restraining orders are governed by the same standard applicable to preliminary
26 injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1
27 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

28 For a TRO or preliminary injunction to issue, Petitioner must establish: "[1] that he is

1  likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of
2  preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in
3  the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner
4  must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v.*
5  *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  However, the Court may weigh Petitioner's
6  showing on each of the *Winter* factors using a sliding-scale approach. *Id.* A stronger showing on
7  the balance of the hardships may support issuing a TRO or preliminary injunction even where
8  there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a
9  likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if
10 "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ]
11 sharply" in Petitioner's favor in order to obtain preliminary relief. *Id.* at 1134–35.

12 **III.    ANALYSIS**

13 The Court considers each of the *Winter* elements with respect to Petitioner's motion.

14         A.       <u>Likelihood of Success on the Merits</u>

15 Petitioner argues he is likely to succeed on the merits of his due process claim challenging
16 his arrest and detention without a pre-deprivation hearing. (ECF No. 10 at 6–17.) Petitioner
17 argues that because he is neither a danger nor a flight risk, his detention serves no legitimate
18 purposes and is impermissibly punitive. (*Id.*) In opposition, Respondents claim Petitioner is an
19 "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)
20 ("§ 1225(b)(2)"). (ECF No. 14 at 4–6.) Respondents argue they have not violated Petitioner's
21 due process rights because as an applicant for admission, he is subject to mandatory detention and
22 no bond hearing is permitted. (*Id.* at 6–7.)

23 The Fifth Amendment Due Process Clause prohibits government deprivation of an
24 individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d
25 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of
26 the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)
27 ("[T]he Due Process Clause applies to all 'persons' within the United States, including
28 [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). These

1  due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at
2  693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).
3      Courts examine procedural due process claims in two steps: the first asks whether there
4  exists a protected liberty interest under the Due Process Clause, and the second examines the
5  procedures necessary to ensure any deprivation of that protected liberty interest accords with the
6  Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);
7  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,
8  the question remains what process is due."). The Court considers each step in turn.

          *i.*       *Liberty Interest*

10     "Freedom from imprisonment—from government custody, detention, or other forms of
11 physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."
12 *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or
13 over whose liberty the government wields significant discretion retain a protected interest in their
14 liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Although in some
15 circumstances the initial decision to detain or release an individual may be within the
16 government's discretion, the government's decision to release an individual from custody creates
17 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only
18 if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey*, 408 U.S. at
19 482) (modifications in original). "Accordingly, a noncitizen release from custody pending
20 removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo*
21 *Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).
22 To determine whether an individual's conditional release rises to the level of a protected liberty
23 interest, courts have "compar[ed] the specific conditional release in the case before them with the
24 liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-
25 01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) ("*R.D.T.M. I*") (quoting
26 *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010).
27     Here, the Court finds Petitioner has developed "enduring attachments of normal life" as
28 described in *Morrissey*, 408 U.S. at 482. In the five years following his release by ORR,

1   Petitioner has established a life in New York, working diligently to support himself and his
2   family through lawful employment in roofing repair. (ECF No. 10 at 11.) He has become
3   involved with his local community, regularly attending church and participating in church
4   activities. (*Id.*) Once the priority date on his SIJS petition becomes current, Petitioner will be
5   eligible to adjust his status to that of a lawful permanent resident. (*Id.*) For these reasons, the
6   Court finds Petitioner has a liberty interest in his conditional release under *Morrissey*.

7   Respondents argue the government has not violated Petitioner's due process rights
8   because he is an applicant for admission subject to mandatory detention under § 1225(b)(2).
9   (ECF No. 14 at 4–7.) Respondents' position is that any "alien who has not effected a legal entry,
10  *i.e.*, has not been admitted into the United States," is considered an applicant for admission. (*Id.*
11  at 6.) Despite Petitioner being in the United States since 2019 and placed into the custody of and
12  released by ORR, Respondents claim he is an applicant for admission because he was
13  "intercepted after illegally entering near a port of entry and was deemed inadmissible due to lack
14  of documentation." (*Id.* at 5–6.) When questioned during the hearing about the overwhelming
15  adverse legal authority rejecting Respondents' interpretation of § 1225(b)(2), Respondents argued
16  that the facts of this case are distinguishable because Petitioner entered the United States in 2019
17  and ostensibly has less of a liberty interest compared to those who have been in the United States
18  for twenty years. Respondents also pointed out that Petitioner was apprehended at the border and
19  placed under the authority of the Department of Health and Human Services. In response,
20  Petitioner argued the facts of this case are similar to those of *R.D.T.M. v. Wofford*, No. 1:25-CV-
21  01141-KES-SKO, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) ("*R.D.T.M. II*"), where the
22  court found an unaccompanied minor was not subject to mandatory removal under § 1225(b)(2).

23  Section 1225(b)(2) provides that "in the case of an alien who is an applicant for
24  admission, if the examining immigration officer determines that an alien seeking admission is not
25  clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding
26  under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). "A noncitizen detained under
27  Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or
28  significant public benefit' under 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, No. 1:25-CV-

1    11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (citing *Jennings v. Rodriguez*, 583

2    U.S. 281, 300 (2018) ("That express exception to detention implies that there are no *other*

3    circumstances under which aliens detained under § 1225(b) may be released.")). Apart from this

4    limited exception, detention under § 1225(b)(2) is mandatory, and individuals so detained are not

5    entitled to a bond hearing. *Jennings*, 583 U.S. at 297.

6          The Court disagrees with Respondents and finds Petitioner is not subject to mandatory

7    detention under § 1225(b)(2) for several reasons. As an initial matter, Petitioner cannot be

8    simultaneously subject to both § 1225(b)(2) and the TVPRA because their detention schemes are

9    facially incompatible. "The detention of unaccompanied minor children is governed by the

10   TVPRA, which does not mandate detention." *R.D.T.M. II*, 2025 WL 2686866, at *4. Instead, the

11   TVPRA provides that "an unaccompanied alien child in the custody of the Secretary of Health

12   and Human Services shall be promptly placed in the least restrictive setting that is in the best

13   interest of the child." 8 U.S.C. § 1232(c)(2)(A). If the unaccompanied child "reaches 18 years of

14   age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall

15   consider placement in the least restrictive setting available after taking into account the alien's

16   danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). This can

17   include placement with an individual or organizational sponsor, or in a supervised group home.

18   *Id.* This requirement of placement in the least restrictive setting is in direct conflict with

19   mandatory detention. Respondents make no attempt to reconcile the two, nor do they argue or

20   present authority suggesting § 1225(b)(2) usurps the protections afforded by the TVPRA.

21         In considering whether Petitioner's detention is governed by the TVPRA versus

22   § 1225(b)(2), the Court considers the following: (1) Petitioner entered the United States at the age

23   of 17 and was classified as an unaccompanied child under the custody of ORR (ECF No. 10-3

24   ¶ 10); (2) Petitioner was released into the United States by ORR pursuant to the TVPRA (ECF

25   No. 10-7 at 5); and (3) there is nothing on the record to suggest the government had attempted to

26   apply § 1225(b)(2) to Petitioner prior to Respondents' opposition to the instant motion. Based on

27   these facts, the Court finds Petitioner's detention can only be governed by the TVPRA, not

28   § 1225(b)(2), for two primary reasons. First, if Petitioner was in fact an applicant for admission

1  under § 1225(b)(2), his release could only have been pursuant to the limited exception provided
2  by 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 300 ("That express exception to detention
3  implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be
4  released."). Petitioner's classification as an unaccompanied minor and subsequent release under
5  the TVPRA thus indicates he is not an applicant for admission confined to the conditions that
6  classification carries. *See Salvador v. Bondi*, No. 2:25-CV-07946-MRA-MAA, 2025 WL
7  2995055, at *7 (C.D. Cal. Sept. 2, 2025) ("[W]hen Petitioner crossed the border and was
8  apprehended, the government did not classify him as an applicant for admission subject to
9  expedited removal.  That Petitioner should now—approximately four years after entering the
10 country and being released by ORR—be treated as an 'applicant for admission' defies logic.");
11 *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485–86 (S.D.N.Y. 2025) (same).

12      Second, Petitioner's release pursuant to the TVPRA created a reasonable expectation that
13 he would be entitled to retain his liberty under the TVPRA's protection. *See Ramirez Clavijo v.*
14 *Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *3–4 (N.D. Cal. Aug. 21, 2025) (finding a
15 liberty interest where petitioner was released under § 1226(a) and rejecting the argument that
16 "§ 1225(b) can serve as a new basis for Petitioner's detention, which Respondents raised post hoc
17 and introduced for the first time in this litigation."). Petitioner has a protected liberty interest
18 based on the government's prior representation that he was released pursuant to the TVPRA and
19 because he spent five years at liberty relying on that representation. *See e.g.*, *Sharan S. v.*
20 *Chestnut*, No. 1:25-CV-01427-KES-SKO, 2025 WL 3167826, at *8 (E.D. Cal. Nov. 12, 2025)
21 (finding a protected liberty interest where the government represented to petitioner that he was
22 released under § 1226(a)). Therefore, the Court concludes Petitioner is subject to the TVPRA,
23 not § 1225(b)(2). *See Sandoval v. Rokosky*, No. CV 25-17229 (SDW), 2025 WL 3204746, at *2
24 (D.N.J. Nov. 17, 2025) (holding § 1225(b)(2)'s mandatory detention provision does not apply to a
25 petitioner designated as an unaccompanied minor under the TVPRA); *R.D.T.M. II*, 2025 WL
26 2686866, at *4 (same); *Salvador*, 2025 WL 2995055, at *7 (same).

27      To briefly address Respondents' arguments on the application of § 1225(b)(2),
28 Respondents urge this Court to adopt an expansive reading of the term "applicant for admission"

8

that would allow the Government to detain without a hearing virtually any noncitizen not lawfully admitted into the United States. (ECF No. 14 at 6.) This interpretation has been overwhelmingly rejected by courts across this District, the Ninth Circuit, and the country. *See e.g.*, *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros*, 2025 WL 2637503, at *8 (collecting cases). In comparison, "[t]he government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). Courts have also rejected Respondents' arguments that: (1) noncitizens within the United States lack due process rights (*see*, *e.g.*, *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025)); (2) the doctrine of "entry fiction" applies (*see*, *e.g.*, *Erika Virginia Porras Castillo v. Minga Wofford, et al.*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025)); and (3) recent Board of Immigration Appeals decisions are persuasive and entitled to deference (*see*, *e.g.*, *Salcedo Aceros*, 2025 WL 2637503, at *9–12). Respondents' opposition does not address these voluminous findings, nor did they meaningfully distinguish the facts of this case when provided an opportunity to do so at the hearing.

For these many reasons, the Court rejects Respondents' position and finds Petitioner remains protected under the TVPRA and is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Petitioner has a liberty interest in his release from immigration detention protected by the Due Process Clause.

## ii. Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. In making this determination, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, all three factors demonstrate Petitioner has the right to a pre-detention hearing before a neutral decisionmaker in compliance with the TVPRA.

As to the first *Mathews* factor – Petitioner's private interest – as discussed above, Petitioner has been out of custody for five years. (ECF No. 10 at 11.) During those years, Petitioner established a life in New York, became involved in his local community, and maintained gainful employment. (*Id.*) Petitioner received SIJS and was granted deferred action until August 2027. (*Id.* at 3.) The length of time Petitioner has been in the United States and had expected to remain through deferred action, as well as his connection to his local community, create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

As to the second *Mathews* factor – the risk of erroneous deprivation – the Court finds the risk here to be considerable. The risk of an erroneous deprivation of Petitioner's liberty interest is high where he has received virtually no procedural safeguards such as a bond or custody redetermination hearing. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). This is particularly so where, as here, Petitioner was previously released pursuant to a finding that he was neither dangerous nor a flight risk. (ECF No. 10 at 7.) *See R.D.T.M. II*, 2025 WL 2686866, at *6 ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.") Given this earlier determination, absence of subsequent criminal history, and

1  Petitioner's compliance with all court hearings and required check-ins with ICE, the risk of
2  erroneous deprivation of liberty is high.

3  As to the third *Mathews* factor, the government's interest in detaining Petitioner without a
4  hearing before a neutral decisionmaker is low. *R.D.T.M. II*, 2025 WL 2686866, at *6. Custody
5  hearings in immigration court are "routine and impose a 'minimal' cost," and the government's
6  interest is further diminished because Petitioner has consistently appeared at his court hearings
7  and check-ins with ICE and does not have a criminal record. *Id.* (citing *Doe*, 787 F. Supp. 3d at
8  1094; *Pinchi*, 2025 WL 1853763, at *2). For these reasons, the Court finds Respondents' interest
9  in placing Petitioner in detention without a hearing is low and does not outweigh Petitioner's
10 substantial liberty interest and risk of erroneous depravation. Due process thus requires that
11 Petitioner receive a hearing before a neutral decisionmaker that complies with the TVPRA prior
12 to any re-detention.

13 Having found Petitioner has a protected liberty interest and determined that due process
14 requires Petitioner receive a hearing before a neutral decisionmaker in compliance with the
15 TVPRA prior to re-detention, the Court finds that Petitioner has established a likelihood of
16 success on the merits.

17              B.    Irreparable Harm

18 Respondents argue Petitioner has not met his burden to show irreparable harm because he
19 has received "the minimal rights and processes that Congress has given him." (ECF No. 14 at 7–
20 8.) As set forth above, the Court disagrees. Further, the Ninth Circuit has recognized that there
21 may be numerous "irreparable harms imposed on anyone subject to immigration detention," such
22 as "subpar medical and psychiatric care in ICE detention facilities [and] the economic burdens
23 imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995.
24 These harms are present here where Petitioner's detention has caused him significant emotional
25 harm and loss of income and jeopardized his housing and ability to support his family. (ECF No.
26 10-3 ¶¶ 46–54.) Petitioner's detention has also caused profound emotional distress for his family
27 and community. (*Id.*; ECF No. 10-5 (letters of recommendation).) Further, as detailed above,
28 Petitioner has endured harsh and unsanitary conditions in detention. (ECF No. 10-3 ¶¶ 33–44.)

11

Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In addition to presenting the harms imposed by immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claims. Thus, the Court finds Petitioner has suffered irreparable harm.

### C.     Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). Moreover, the public has a strong interest in ensuring its government follows the law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are staggering[.]" *Hernandez*, 872 F.3d at 996; *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.")

Respondents argue the balance of equities and public interest do not favor Petitioner because "the government's interest in protecting the public and preventing deportable non-citizens from fleeing [is] strong and compelling." (ECF No. 14 at 8.) The Court finds this unsupported statement completely detached from the facts — Petitioner has no criminal history, entered the country as an unaccompanied minor, and has complied with all court hearings and every ICE required check-in. (ECF No. 10-3 ¶¶ 23–27, 46.) Moreover, as discussed above,

Petitioner has shown he is likely to succeed in proving that Respondents have violated federal laws depriving him of his constitutional rights and liberty. Respondents are not harmed by their sworn duty to follow the law. *See Zepeda*, 753 F.2d at 727. The balance of equities and public interest factors thus weigh in Petitioner's favor.

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a TRO and a Preliminary Injunction, (ECF No. 10), is GRANTED.

2. Petitioner's Motion to Proceed via Pseudonym, (ECF No. 3), is GRANTED.

3. Respondents are ENJOINED AND RESTRAINED from arresting, detaining, or removing Petitioner absent compliance with constitutional protections and the TVPRA, including notice and a pre-deprivation hearing before a neutral decisionmaker where placement in the least restrictive setting available is considered after taking into account Petitioner's danger to self, danger to the community, and risk of flight. 8 U.S.C. § 1232(c)(2)(B).

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases like this one. *See*, *e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

5. This Preliminary Injunction shall remain in force throughout the pendency of this action unless earlier modified by the Court.

6. This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: December 9, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

13